## ELIAS ENDICOTT, Petitioner, &c.

Exceptions will not lie to the doings of the Court of Common Pleas relative to the laying out of a highway.

If, after the county commissioners have laid out a highway and assessed the damages sustained by the owner of land over which it is laid out, such owner removes his fences and rebuilds them on the line of the highway so laid out, he does not thereby deprive himself of his right to a jury to reassess the damages.

In this case it appeared, that a highway was laid out by the county commissioners across a parcel of land belonging to the petitioner. Being dissatisfied with the amount of damages allowed him by the commissioners, he petitioned them for a jury to reassess his damages. At the trial by the jury, before the sheriff, the agent for the county objected, that the petitioner had removed his fences and reset them on the lines of the highway as laid out, by reason of which the land could not be seen in the condition in which it was when the damages were assessed, nor could it be ascertained what was the condition of the fences at that time, and that the removal of the fences after knowledge of the damages awarded by the commissioners, was a good reason for the belief that the petitioner then assented to the award ; and such agent, therefore, protested against the right of the petitioner to have his damages reassessed by a jury. The jury enlarged the petitioner's damages, and in the Court of Common Pleas the agent for the county moved to set aside their verdict, because the objections taken before the sheriff were overruled. That court, however, accepted the verdict ; and to this decision the agent for the county filed exceptions.

*Proctor* supported the exceptions.

*Saltonstall*, for the petitioner.

MORTON J. delivered the opinion of the Court. The first question, which arises in the case, is whether the exceptions were properly allowed.

A bill of exceptions is a common law remedy applicable to cases where errors are supposed to occur in the proceedings of any suit, which do not appear of record. When the exceptions are allowed by the court, they are incorporated into and become a part of the record, and thus lay the foundation

*Nov. 7th, 1834.*

*Nov. 24th, 1834.*

for a writ of error. In such case, the judgment can only be confirmed or reversed. This mode of proceeding was found to be cumbrous and inconvenient in practice, and sometimes subversive of justice in its results. To remedy these evils, legislation was deemed necessary. In the statute of 1804, *c.* 105, § 5, provision was made for exceptions in a summary mode, to any opinion, direction, or judgment of this Court, when holden by one justice. And by statute of 1820, *c.* 79, § 5, any party thinking himself aggrieved by any opinion, direction, or judgment of the Court of Common Pleas, may allege exceptions in a summary mode, and bring the case, in the most direct and easy manner, before this Court. When the case is thus brought before us, we have the same authority in relation to it which we should have had, if the case had been tried before any justice of this Court. We may render judgment and issue execution, or grant a new trial, as law and justice may require. But if we grant a new trial, it must be at the bar of this Court ; and the statute does not give us the power to remand the case or to send it to any other tribunal for a retrial.

Now, although the expressions of the statute allowing of exceptions are broad and general enough to cover all cases, yet the subsequent provisions of the same section manifestly restrain and limit these general expressions. And taking the whole section together, its meaning is pretty obvious. And we are of opinion, that the right of alleging exceptions is confined to cases where the proceedings are according to the course of the common law. For in such cases only has this Court the power to retry the action. Thus exceptions will not lie to the direction of the Common Pleas in a trial of a complaint under the bastardy act ; *Gile* v. *Moore,* 2 Pick. 386 ; nor to a decision of that court in accepting a report of referees made under a rule entered into before a justice of the peace ; *Dean* v. *Dean,* 2 Pick. 25 ; although they will when it is a rule of Court. *Miller* v. *Miller,* 2 Pick. 570.

If we sustain the exceptions, and reverse the judgment of the Common Pleas, no new trial can take place, and this Court has no power to send the case to another tribunal for further proceedings. The verdict and adjudication of the Court

of Common Pleas thereon, is to be certified by the clerk to the commissioners, but the statute does not contemplate any decision of this Court by appeal or otherwise. We are, therefore, of opinion, that the exceptions were improvidently allowed, and must be dismissed.

The general supervisory power of this Court in cases of this kind, must be exercised in some different method. If any inferior tribunal refuse to take cognizance of any case properly before it and within its jurisdiction, the remedy is by *mandamus*. If it errs in any adjudication, the error is to be reversed and corrected upon *certiorari*.

Although the decision of the Common Pleas is not regularly before us, yet, as it may be convenient to the parties to know the opinion of this Court on the question intended to be submitted, we will proceed to give it.

The objection to the verdict is, that the petitioner, having removed the old fences and built new ones on the line of the road laid out by the commissioners, has thereby deprived himself of a right to a jury. He did not apply for a jury to alter the laying out of the road, but only to reassess the damages caused thereby.

No general principle of law or equity will operate to deprive the petitioner of his right to a jury. The acts done by him might facilitate or might embarrass the inquiry by the jury, according to the situation of the land and the circumstances of the case. Whether in this instance it produced the one or the other effect, does not appear. If it was done with an intention to gain an unfair advantage, the vigilance of the agent for the county would be sure to detect and point it out ; the intelligence and integrity of the jury would not fail to defeat the unjust attempt.

But where a road is laid out, and the owner of the land over which it is located does not intend to contest the location, we can perceive no reason why he may not consult his own convenience as to the time and manner of removing and rebuilding his fences. And in doing this, we do not think he waives any right he may have in relation to the assessment of damages.

It cannot be pretended, that it comes within any of the provis-

Endicott,
Petitioner,
&c.

ions of the statute of 1827, *c.* 77.    The only clause supposed to have any bearing upon the subject is in the 12th section.    It is there provided, *"that whenever the commissioners shall order a jury to consider and report upon the laying out, alteration, or discontinuance of any highway, the way so laid out or altered shall not be opened or worked,"* until the verdict of the jury is or may be returned.    It is very obvious, that neither the words nor the principles of the above clause apply to the case before us.    It is intended to regulate the duty of the commissioners, and not to restrain rights of private individuals.    Any person affected by the laying out of a road is entitled to a jury for two purposes ; the one, to revise the judgment of the commissioners in awarding damages, and the other, to revise their decision in the location of the way itself.    And it is at his option to apply for a jury for one or both these purposes.    It is the duty of the commissioners, when they establish a highway, to prescribe the manner in which it shall be made, and the time within which the same shall be completed. But if any person applies for and establishes his right to a jury, it may become extremely inconvenient or improper to proceed to work the road.    This will depend upon the power which is to be exercised by the jury.    If they are summoned to estimate the damages only, there may be no very strong reason why the working of the road should not proceed.    But if they are summoned for the purpose of altering the location, it is very apparent that the making of the road should be suspended till their decision on this point can be known.    Other wise the preparation of the road for travel might be rendered useless and injurious, by a change of its course.    And this distinction is clearly recognised in the section under consideration. It only requires the commissioners to suspend the making of the road when the jury is summoned for the purpose of making alterations in the location ; while it leaves it to their discretion to proceed or not, when a jury is ordered for the purpose of estimating damages only.

The terms, *" opened and worked "* in the clause under consideration, refer to the commissioners and not to individuals.    It is not by fencing out a road, that it is to be deemed to be *opened.* But it is the decision of the commissioners, that the road has

been worked and completed according to their directions and to their acceptance, that makes it an *open* public highway ; which all citizens have a right to travel, and which the towns within which it lies are bound to maintain and keep in repair.

We are of opinion, that the Common Pleas did right in accepting the verdict.

*Exceptions dismissed.*